Amsinck v. Bean, 22 Wall. [89 U. S.] 404; Emery v. Canal Nat. Bank [Case No. 4,446]; In re Webb [Id. 17,317].

---

## Case No. 4,045.

### In re DOWNING.

[3 N. B. R. 741 (Quarto, 181);[1] 2 Chi. Leg. News, 313.]

District Court, E. D. Missouri. May 3, 1870.

BANKRUPTCY—ADVERTISEMENTS OF SALES.

Rule as to the legal rate of charges for printing advertisements of sale of real estate by order of the court.

I, Lucien Eaton, one of the registers of said court in bankruptcy, do hereby certify that in the course of the proceedings in said cause before me, the following question arose pertinent to the said proceedings; to wit: The assignee presented for my signature a check for one hundred and sixty-six dollars and fifty cents, in favor of Geo. Knapp & Co., for printing an advertisement of sale of real estate under the order of the court. The notice contained five and 15-100 folios each, and was printed thirty-six times. At the rate allowed by the statute of 26th February, 1853, this would amount to thirty-seven dollars. The statute alluded to says, that printers shall be allowed "for publishing any * * * notice * * * required by * * * the lawful order of any court * * * in any newspaper, forty cents per folio for the first insertion, and twenty cents for each subsequent insertion." I am aware of no other statute in force on this subject. For the reason that it seemed plainly a case within the statute, I felt constrained to withhold my signature till the opinion of the court should be had, which I now request for my guidance. Lucien Eaton, Register.

TREAT, District Judge. The computation is to be in accordance with the following rule: Each square of eight lines, first time, $1.00; each subsequent insertion, per square, $.50

---

DOWNING, In re. See Case No. 12,212.

DOWNING (SMITH v.). See Case No. 13,036.

---

## Case No. 4,046.

### DOWNING v. TRADERS' BANK.

[2 Dill. 136;[2] 11 N. B. R. 371.]

Circuit Court, E. D. Missouri. 1873.

BANKRUPTCY—SECTION 19 CONSTRUED—PAYMENTS BY SURETY AFTER BANKRUPTCY OF PRINCIPAL DEBTOR.

1. The bona fide holder for value of an accommodation bill is entitled on the bankruptcy of parties thereto, to prove as to all parties

[1] [Reprinted from 3 N. B. R. 741 (Quarto, 181), by permission.]

[2] [Reported by Hon. John F. Dillon. Circuit Judge, and here reprinted by permission.]

against whom the holder could have supported an action on the bill.

2. The receipt by a holder of a bill drawn by the bankrupt, but accepted for the accommodation of the drawer, of partial payment from the accommodation acceptor after the bankruptcy of the drawer, does not disentitle such holder from proving against the estate of the drawer in bankruptcy for the full amount due on the bill at the time of the adjudication of bankruptcy.

[Explained in Re Hollister, 3 Fed. 454. Cited in Re Broich, Case No. 1,921; Re Baxter, Id. 1,121; Re Pulsifer, 14 Fed. 249.]

3. Section 19 of the bankrupt act [of 1867 (14 Stat. 525)], in respect to partial payments made by a surety after the bankruptcy of the principal debtor, considered.

[Cited in Re Hollister, 3 Fed. 454.]

4. A mere covenant by a creditor not to sue an accommodation acceptor does not prevent him from proving against the drawer's estate in bankruptcy.

This was a contest in the district court between Downing's assignee in bankruptcy and the Traders' Bank of St. Louis, and the cause is brought here by the bank to obtain a review of the decision of the district court ordering the bank to credit the sum of $4,000 on its claim against the estate. Downing was adjudicated a bankrupt on the 9th day of December, 1869, upon a petition filed against him on the first day of that month. On the 12th day of February, 1870, the Traders' Bank filed and made proof of a claim against the estate of Downing for $18,500, composed of three protested drafts, each drawn by Downing; one for $4,500, protested June 15, 1869; one for $6,000, protested June 26, 1869; and one for $8,000 (being the one to which the present controversy relates), protested September 7, 1869. Accompanying the proofs of its claim, the bank filed a list of collaterals held by it. In January, 1872, the assignee objected to the proof of claim by the bank, on the ground that it should credit the sum of $4,000, alleged to have been paid by Saunders Bros. & Co. in the manner hereafter appearing.

The objections of the assignee were, by the parties, submitted to the district court upon the following agreed statement of facts:

"First. It is agreed by said parties that bankrupt on June 4, 1869, at St. Louis, Missouri, drew his draft on and directed to Saunders Bros. & Co., Boston, Mass., and thereby requested them, three months after date thereof, to pay to the order of bankrupt $8,000, value received, and to charge to his account.

"Second. This draft was accepted by Saunders Bros. & Co. for the accommodation of the drawer and payee, and without any consideration from said Downing to said Saunders Bros. & Co., it being a mere loan of their name, and that bankrupt discounted and sold this paper to said Traders' Bank for value.

"Third. That said Saunders Bros. & Co., after said draft had been duly protested, and all parties properly made liable thereon, and